Case number 23-1940, Dennis Speerly et al. v. General Motors LLC. Arguments not to exceed 15 minutes per side. Mr. Godfrey, you may proceed for the appellant. Good morning, may it please the court. My name is Rick Godfrey, I represent As the court knows, we're here today on an appeal of a multi-state class certification order from Judge Lawson, 26 states, hundreds of thousands of vehicles, 59 different state law claims, 4 different model years, 7 different model segments, where most of the vehicles have performed exactly as anticipated. We've briefed a lot of issues for the court, more than in many cases, but I'd like to focus my attention, and the court's attention, on 3 principal ones that we think warrant reversal and a remand with guidance for the district court. The first issue is the issue of the arbitration agreements. We know from discovery and it's undisputed that approximately 40% of the absent class members or more have arbitration agreements. What they provide, what terms they have, differ. Who decides the scope of the arbitration depends upon the agreements, and generally speaking, courts enforce that. In fact, in this case, there's a companion case called Harper and Ulrich, where for the state of California, Judge Lawson enforced the arbitration agreements in order to arbitration in that case. My understanding was that the reason why he didn't accept your argument was because you raised it too late. Correct. He said waiver, and here's our problem with that. This is a pure question of law, and as an aside, the arbitration agreements implicate predominance, because you have to have discovery as to who has them. They implicate superiority, manageability, and they implicate ascertainability, because we don't know who has the agreements. We discovered this during the course of discovery with the named plaintiffs. It's impossible for a defendant, prior to class certification, to have raised an arbitration agreement against absent class members too late. They're not parties to the court. Are we the present class members? We did not raise it. It was discovered during the course of discovery that they had it, and it was not raised. Yeah, but you're representing a major car company, and you know what dealers do. Anybody reading the newspapers knows that virtually every consumer signs an arbitration agreement to buy widgets. So you knew, and I have no idea about the name. How many named plaintiffs were there? Well, there were 81 of which. A majority have dropped out of this lawsuit, which is a separate problem. Yeah, but you knew enough to raise this, didn't you? How could we have raised it? The court had no jurisdiction over absent class members, and we filed a motion to compel. First of all, I wouldn't say. Oh, it's to the named plaintiffs. That was not raised. They were discovered. It was discovered during the course of discovery that certain named plaintiffs had it, and by the way, Your Honor, going back to the threshold predicate of your question, we know that some dealers have arbitration agreements. We know many dealers do not. It's an individual question. We don't have a roster that says, oh, this dealer has it, and therefore, we can track back. So it's unknown as to which dealers do and which dealers do not. Going to Your Honor's question, though, it was not raised to the individual members because these were discovered during the course of discovery, after motion practice, after the answer, but on December the 21st, 2021, and we cite this in our brief, one of my colleagues, Ms. Douglas from the Bush Safeguard Firm, raised this with Judge Lawson and said, we've discovered that there are class members, absent and current, that they have arbitration agreements, and he said, well, I assume then you're going to raise this in opposition to class certification. That was what he said, and then they had an amendment that they made to their complaint, and several weeks later, we then amended it and raised essentially a conditional affirmative defense. But the case law is clear. We had no power to bring a motion to compel. It would have been sanctioned under Rule 11. These are non-parties. The case law is clear that one does not have an obligation to make a conditional arbitration defense or raise it. That's the Gutierrez case, which we cite from the 11th Circuit. And so this notion of waiver for non-class members who are not parties before the court, over whom the court has no jurisdictional power, and so... Assuming that you're correct for the moment, would the resolution, the proper resolution, be to separate out into two subgroups, one, the groups that do not have arbitration agreements, and let that class certification go forward for those people, and separate out the people for whom there are arbitration agreements and send those cases to arbitration first? That, in theory, is an avenue forward. Here's the problem with it, I submit, but that's going to be an exercise of your judgment and wisdom. More importantly, the problem for Judge Lawson when he gets back on remand. How do we separate it out? Without individual discovery, we don't know. So Texas, for example, has 111,000 class members. Do I then serve a docket request on 111,000 people when I get back before Judge Lawson to say, do you have an arbitration agreement or not? In other words, how do we know? It's unlike... You have to know. There are common questions of law or fact, and the D.J. has said that they predominate. We obviously need to address that in our analysis here, but why couldn't the district judge decide the common questions of law or fact, and then separate out the cases that have to go to arbitration? Because, first of all, it creates a false narrative for the jury. Let's assume we go to a jury. The plaintiffs will say there's 111,000 people in the state of Texas who have been injured, where maybe only 500 people are not subject to arbitration clause. But you would say that. You would say, yeah, the plaintiffs say that, but in fact, our information is that 40% are going to go to arbitration. But this is the question of culling and what a district court judge's obligation is. I don't think that it's appropriate to essentially every difficult issue, which under Amgem or Walmart or this court's decision in the Fox or Ford cases, where the district court is supposed to grapple and rigorously analyze the evidence and apply the law to the evidence, that you just kick the can down the road and say, well, we're not going to do that. That's the problem. But that's the first issue, and it's a serious issue. It's somewhat novel. The second issue is the manifest defect rule. And the reason why these are important is once you consider these two issues together, by my estimate, you're talking somewhere between 76% and 82% of the total absent class members for all classes combined. So the manifest defect rule is a rule applied not in every state. It's applied in many states, but not in every state. And take the largest state here in Texas. It's uniformly applied. And the district court judge basically said, well, if this has to be an issue, we'll decide this later on. But it should be decided now. We should know who's in the class and who's not in the class. So again, my question is, why not separate out? So you said numerous states have this, and I presume, and it's probably in the briefing, that you list the states that have the manifest defect rule. Why not separate those out for a subclass or say the class certification doesn't apply at all to them? Well, again, how do you identify the people unless you can identify who has had a manifested defect? It goes to predominance. It goes to ascertainability. And again, it goes to this concept of culling. If every issue that other courts have said they have to grapple with and rule on, this circuit will say, no, we're just going to defer that until after trial? I mean, let's look at the culling procedure. The planners are saying that's an administrative procedure. A claims administrator is someone else. What happened to General Motors due process rights? We have the right to put in counter evidence. We have the right to engage in individual discovery. But to give you a sense of the significance of this, Texas alone is 20.1 percent, this is based on the evidence from their own expert, 20.1 percent of the vehicles at issue for all these state classes. New York's another 3.5 percent. Illinois is 3 percent plus. So if you look at just the top 12 states that we identified in our brief, it comes to 62.1 percent of all absent class members are subject to the manifest defect rule. And to answer Your Honor's question. What do we do with the fact that the district court judge said the defects have either already surfaced or it's inevitable that they will manifest? What do we do with that? For those that have already surfaced, under the manifest defect rule states, they would say it satisfies the rule if they've actually surfaced. For those that have not surfaced, based upon the statistician's projections, which are essentially pure conjecture, the manifest defect rule says you don't have a claim unless and until they manifest, period. So you don't have to worry about those. By the way, on the WAC's statistics, she double counts and she ignores the improvements over time, including the fact that their own expert admits that the shutter alleged defect has been fixed and it's covered by warranty yet for many of these vehicles. But is there, and I realize I may be taking you afield, sorry about that. I'm here to answer your questions. I know. Is there a claim that all of these cars are worth less because of these problems? So that's the fraud on the market theory. And that's a problem in and of itself because no courts have adopted the fraud on the market theory. That's what their expert says. Now the in-rate Canadian export antitrust litigation for the First Circuit says there's fundamental problems with that notion because their expert assumes everyone pays MSRP and no one pays MSRP. So the First Circuit rejected that when it decertified a class in the First Circuit back in 2008. The Hague case out of the Western District of New York said that doesn't work. But no court has adopted, no federal court has adopted the fraud on the market theory which says whether you knew about it, whether you agreed to it. I mean, their expert Eichmann says, and we quote this in our reply brief, even if they purchased and they knew about the alleged defect, they still have a claim. That's just not the law. It's never been the law. No court has ever accepted it. And at the state court level, it is definitely not the law. And all of the claims here are state law claims, correct? Correct. Correct. So we do need to look at the law of each state to figure out what the highest court would say on this particular topic. That's correct. That's correct. And in Texas, we've had, I see my time is up. Yes, your time is up. Unless there's a, I think I answered your question, but I thank you very much. It goes very quickly. Yes, it does. Thank you so much. And we obviously have studied everybody's briefs. Good morning, Your Honors. On behalf of the appellees and plaintiffs, Douglas McNamara. I'm sorry, Judge Cole couldn't be here. I hope he feels better. He will, for everyone concerned, he will listen to the arguments and participate fully in our decision making. That's wonderful. Three points I wanted to get to and address your questions. For Article 3 purposes, everyone is injured. Not because of the fraud of the market theory, which we never mentioned in any of our papers, but because they overpaid. The price premium theory that this court recognized in Whirlpool and in Daffin and in Hadley and in Laredo and every other circuit court has found, including Cole. We also allege a diminished value. I mean, not the Eighth Circuit, right? The Eighth Circuit. It depends on the panel. The Eighth Circuit did recognize overpayment and diminished value satisfied for Article 3 purposes in the George v. Megaflex case, a case that was argued actually by the defendants to get federal jurisdiction. Their briefing, which is fantastic, is in the record 249-2. They explained it was run of the mill that if you overpaid for something and didn't get what you paid for, you've been economically injured. That's what TransUnion has said is a hallmark. It's the most tangible monetary harm, economic injury. In other cases, the Eighth Circuit says the opposite. It has been rather inconsistent on this. You had some cases called Polaris, which Mr. Godfrey and I know all too well. We were together on that one. The Polaris v. Johanneson case where they went one way based upon some prior rulings on whether or not you could prove a state court claim on an overpayment or diminished value, Breel and O'Neill with precursors. And then George and Zurn went another way. The Sixth Circuit doesn't have the burden of Breel and O'Neill. Judge Lawson didn't have those precedents to deal with. He had Daffin and he had Whirlpool, where this court said, if you don't get what you paid for, you have a warranty claim under Ohio, Express Ohio, implied in those two cases. Every other circuit, First and Evenflow, Second, Third, Fifth and Colvin, which was a GM case, Sixth, Seventh, Eleventh, Ninth, have all said the opposite. And really, that's one of the opportunities this court has today, is to just finalize this. Every district court in the circuit has read rule pause applicable to Article III. And really, this court should just finalize that now. But Whirlpool wasn't addressing Article III. It wasn't addressing state and local. That is correct. It addressed the higher issue of, can you make the Ohio State claim out? The cognizable issue, the concrete issue is, do I have an injury? That's even a lower bar. So, every district court has read Whirlpool as reaching that. And Whirlpool did also rely on Stearns v. Ticketmaster, a Ninth Circuit case which was about Article III standing, and the quote that Whirlpool had refers to standing on that. So, it kind of got there. It'd be nice if this court ends that issue once and for all and makes it clear and joins all the rest of the circuits, even at time the Eighth Circuit. My colleague addressed Arbitration, and Your Honor raised, I'm going to talk about calling and I want to make sure I also talk about Arbitration. Absolutely correct on the waiver, but what my colleague was talking about was, well, we couldn't move. We didn't have jurisdiction. We couldn't move. But you could plead it. And that's the problem here. They never pled it in the affirmative answer. And this court in Menasher says that Rule 8c requires a defendant plead Arbitration as an affirmative defense in its answer or it will generally be deemed waived. What about his argument that they didn't know whether there were Arbitration Agreements for individuals and they need to have discovery to figure that out? Two things on that. The reason they don't know is because they don't actually have any Arbitration Agreements. It's the dealers. They are basically inspired by StockX, decided, hey, let's try this gambit where we can try to glom onto the dealers' agreements. So at the time this case started, they didn't know they might have that gambit. But at the time they figured it out, well, they learned that, but they never still included in their answer until the Third Amendment complaint. So the argument is, well, we wouldn't have jurisdiction. It's belied by their answer after the Third Amendment complaint. This is in the record at 194, page ID 9295. The claims of plaintiffs and the members of the putative class and subclasses may be subject to contractual provisions that require claims asserted to be resolved through arbitration. They could have always pled it. They didn't, and that's why it was waived. But let me get to the meat of it because Your Honor raised a very good point. Well, how would this play out? Not all affirmative defense is the same. This Court in Beattie noticed that and Tyson's Food had noticed that there might be some affirmative defense that's peculiar to some class members that may raise a question, often won't, over the common questions. This is not a predominance-destroying defense. By its nature, it can only be raised after class certification. He doesn't know who might have an arbitration agreement. After the trial on class certification, after the class trial, there will be people, maybe some Texans come up and say, hi, I'm an absent class member. I would like to partake in that wonderful award in front of Judge Lawson just now and get my $1,300. GM could look through the dealer agreements, look at the person's information, say, you know what, for you, I want to raise an arbitration defense. How could that affect predominance? We've already done the trial. It is a post-trial defense. It goes. The whole purpose of arbitration is to avoid doing any trial and to go right to the arbitrator to decide everything. Right, and if this was a case where 100% of the class members had arbitration, it could defeat class because we wouldn't have numerosity. By their own estimate, at best, and it's one they make up, it's 40% or about 320,000 class members. 480,000 is still going to get us to 23-8 numerosity. The class trial's going. It's going to happen. They may have a forum defense, which is what this court called it in Boykin, where they could divert some absent class members and then directly say, well, can you participate or not? But it's not going to affect the predominance analysis. It's already been done. The trial's already happened. And quite frankly, it's not a very helpful defense because this court's decision in the air brake systems case says whatever was decided in the federal court is going to apply in arbitration. Your issue precluded on the facts. You're stuck with what those findings were. And the one time they did this, he mentioned Ulrich, they lost. They spent $45,000 on a claim involving a 1,300 on average damage to have the arbitrators say, no, you cannot rely on the dealer's agreement. Is GM going to spend $45,000 for the 380,000 people they speculate to fight a $1,300 per damage award? That would be $14.75 billion to combat $400 million. It's not a real defense. It is sort of just a hope that a court that has recognized in Stock X and Becker that they could say arbitration that would magically make this go away. But if you play it out, there is no defense here that would actually contramand what Judge Lawson did as to predominance. As it relates to the waiver argument, how do you respond to their position that Judge Lawson sort of, they suggested Judge Lawson told them to wait until certification to raise it? What I think is the exact quote, and I think Mr. Godfrey got it right, was, well, I assume you bring it up. He didn't say, you definitely bring it up. He didn't say, I forgive you for not bringing it up beforehand. He just said, I assumed you'd raise it at some point. And they should have raised it. They should have pled it. And they did not. And that's why it should have been deemed way. But again, on the merits, it's not a defense. Let me get to Culling, which I think is also raised. It was a point I want to address to how this would play out. So let's just say, your honors agree with us, Article III for everybody. Everyone has standing. But there will be some states that may require a manifested defect. We don't think they do. We actually think the law on this is, at best, mixed. There is no state Supreme Court for almost all these states that say, absolutely, it requires a manifest defect. There's some district court. There's lower court. It's a bit of a melange. At the class opposition, defendants said six states require it. They now say 12. So there's a waiver issue there. But there is no real controlling state law in any of these states. And what we presented to Judge Lawson and presented to your honors was the decisions in ignition switch. And at the end of the trio of decisions of ignition switch, the district court said, I've now canvassed the nation on this. I no longer think the majority opinion is that the manifest defect rule applies. In fact, it doesn't really make any sense. If you can show now that you have a present economic injury because you bought a vehicle that you paid too much for because of defects, or because it has diminished value, why do we need to wait for a manifested defect? Okay, so just out of curiosity, your opponent was mentioning Texas. What's your position on the Texas manifest defect situation? There's no controlling, there's no specific state supreme court. The Everett decision says we're not saying for every case you have to have a manifest defect in order to do a warranty claim. And Judge Rosenthal in the, I think, Gordon versus Sig Sauer said, well, we're talking about a product you're gonna have for a long time. I don't think you need to wait. So it's not 100% clear, but let's just say you do. Let me concede that for a moment. There is 111,000 sales in Texas. Dr. Wax looked at the warranty data that was provided. These are warranty data and codes that GM uses. This is record 20114 was the bucket of codes. It's a spreadsheet that GM has where they put all the harsh shift codes and all the shutter codes that GM itself uses for warranty analysis, for figuring out a recall, for technical service bulletins, for figuring out if they're gonna do the retrofit packages that they abandoned. This is what GM relies on. So when they say, well, it's not fair to use codes, this is what they make multi-billion dollar decisions on. It's absolutely fair. You could use those codes like Dr. Wax did, and she found 35% of the vehicles sold in Texas had a warranty code, either harsh shift or shutter. That's about 39,000 vehicles. So there's two ways you can address this if you think Texas requires this. On the front end, class definition. You define the class to say it's only those persons who presented the vehicle for repair, for shutter, for harsh shift in Texas. All those Texans who purchased Texas, I'm screwing this up, all Texas purchasers who presented for one of these repairs related to shutter or harsh shift, and we have the codes to do it. So you can, in the front end before notice, do that calling. You could also do it on the back end at claims administration. It goes forward, it's the same class definition for everybody, and then on the back end, the claims administrators have this data. It's spreadsheets. They have the data with the warranty information, and they can identify these people. And by the way, this court recently, in a case called Jefferson versus General Motors, where a 23F was denied, the class definition there was with Tennessee, another state they claim has manifest defect rule, that the class definition was limited to all Tennesseans who sought a repair from a GM dealer regarding, in that case, a shift to farm defect. Okay, so one thing that was interesting to me about that case was, it was a single state, whereas this one is how many states, 20? It's 26 states. 26 states. Okay, so we have all the different laws involved of the 26 states, and we have the different defects. So one of my big questions is, is the harsh shifting defect one in the same kind of problem as the shutter problem? Or is your position now that they are two separate defects, but they're both involving the transmission of this particular transmission number? It's the latter, and we did bring this up to the judge, and the judge is aware of that. When we do separate defects to the same transmission, and if your honor looks in his decision, in the order R-284, page 204-02, we introduced him to the retrofix packages. This was when GM was considering in 2020. Okay, we think we figured out how to take care of shutter, and this is R-206-13 is the document. We call it PX-323. We figured out how to fix shutter. We got this fluid fix. It works 99% of the time, so it's probably not the tires or anything. It's the fluid. So we got shutter done in March 2019. What are we going to do for our customers now on this other problem, which isn't going away? And they tried to come up with maybe a design fix for that, and they thought, well, what if we give this valve body fix or a new transmission? They did the math for people within warranty, and they're like, this is going to be $707 million. We don't want to spend that money. But they recognized it, and they called it, if you even look at their own terms, they call it shift quality and shutter. These are not things we made up. These are not umbrella terms that we're throwing in, concepts that are multivariate. I mean, this is what GM itself recognized and considered doing, and they did come up with a fix for the harsh shifts, but in model year 2023, after this is over. So the fixes, as you call it, are effective for years after the class action that you're bringing? There is no fix for the harsh shifts. That was a whole redesign which was never made applicable. The fix for shutter is available. They made it available March 2019. They didn't tell people about it. You had to come in and ask for it. They deliberately eschewed doing a notice on it. But it can be done, and in our cost of repair model, damage model, if the jury goes with that one, it would be discounted if you got the fix. You'd have $306 come off, because that's what it cost to do. I don't have much time left, but I just want to address one thing your honor mentioned, because there is a lot of states here. One thing we had suggested to Judge Lawson in trying this case was to pick the biggest three, Illinois, Florida, Texas, maybe start with that. We could bucket the claims. I will point out Judge Lawson has tried a multi-state class action involving cars. He did the FCA model stable case, which had 19 states, and brought that to verdict. He's a very experienced jurist. There's many ways he could do this, and we could also bifurcate to do the common issues here, if need be. I see my time is up. I'm happy to answer any of the questions. Thank you. Thank you for your time. Let's return to the first issue, arbitration. The Gutierrez case says we had no obligation in the 11th Circuit to make a conditional arbitration demand. And that's an 11th Circuit case. It's an 11th Circuit case, but you cannot find a single case in any court at the appellate court level, which has held that the failure to raise a conditional defense of an arbitration, when you subsequently learn absent class members not before the court have arbitration agreements, is wavered. There's no such case, and it'd make no sense, really. Second point is the Menascher case does not say what Mr. McNamara-Suggesta says. Their plaintiff, and this was a Sixth Circuit case, so I don't think you're on the panel, but there, it was an amended complaint, and then they raised it, but it was the same name plaintiff, and they said you could have raised it before. Fundamentally different. Fundamentally different facts. So the arbitration agreement issue is an illustration, though, of the broader problem with Judge Lawson. Much of what was just said, Judge Lawson did not analyze. He didn't analyze this. He basically kicked the can down the road and said, I'm going to defer. We're going to have these procedures later on. And the problem is, that is fundamentally unfair. So take the Jefferson case, which I know you're familiar with, the supplemental letter. While General Motors has a problem with that certification, at least the judge there recognized that people who do not have a manifest defect shouldn't be in the class. General Motors' concern was how do you identify it without individual discovery, but it was defined, the class was defined, so the only people that have legitimate claims under state law, and the state law of Texas, the state law of the other states is uniformly one way. The Sig Sauer case involved Glocks, a long serving product, where if you drop them, they'd fire, and Judge Rosenthal did not find some big exception. So take one of the cases they cite, their favorite, called Sikeros from Judge Chen in the northern state of California. He decertified the Texas class. The Sonnefeld case in central district California decertified the Texas class based upon the manifest defect rule. So the notion that says we should have the trial and then worry about this issue, I submit that that's backwards. You need to have them not in the class to begin with. And there are basically no cases that have done what Judge Lawson did here, which is to keep people with no valid claim in the case. So that's your problem with arbitration, predominance, how you determine who has agreements, same with manifest defect rule. In terms of arbitration, his argument was, well, it's a worthless exercise because they lost. Well, we have a right to insert the defense, and whether the case is successful or not, we'll see. Sometimes it's been successful. California Supreme Court has the very issue before it now. Case is going both ways. Then we come to the issue of WOCs and saying it's easy to identify because of the GM codes, the 35,000. That's WOCs' view of what the GM codes provide, but there are two problems with that. One problem is that WOCs included another category, which is people came in for warranty repairs. The second problem is, on this record before the court, it is undisputed that there are eight different unrelated non-defect causes of transmission issues, and it is undisputed on the record before this court that the two experts, that is McVeigh for the plaintiffs and General Motors experts, they agreed on some vehicles when they inspected them, had transmission problems. They disagreed on others, and for three named plaintiffs, including Plaintiff Espiri, they couldn't find a transmission problem. Just because the record says someone came in for a warranty repair because they believe there's a transmission problem, just because they claim they had a shutter, doesn't mean it actually materialized. It's purely a hoax. The codes simply reflect that you came in for a problem as opposed to what the problem actually was. Well, they can do both because there's a code for a person comes in for a shutter. That doesn't necessarily mean the person got a repair for a shutter. They might have gotten a repair because it was caused by something else. My point, you're agreeing that when you come in and you say, I have a shutter, the code will say . . . There's a code that can categorize for shutter. There's a code that can categorize for harsh shift or something like that. That's when the customer comes in as opposed to when the car goes back to the individual. I don't know the detail on that, but I can simply say we know there's multiple causes and we know that even the experts here agree on some and disagree on others, including three named plaintiffs where the named plaintiffs said, I've got harsh shift and or shutter and the plaintiff's expert said, I can't find a problem, including Spearley, Ho, and Dyckhorn. But then isn't the remedy to dismiss those three . . . I think there are a bunch of named plaintiffs here, right? Well, there were 81 originally and most have been dismissed, but the remedy is to recognize that the facts are fundamentally different plaintiff by plaintiff, which is why if you do the predominance analysis applying the law correctly, there can't be a class. At least the judge in Jefferson recognized you can't have a class with non-class members or absent class members where they've had no manifest defect. I see my time has expired. Thank you very much. It's always a privilege to be here. I've not been here for a number of years. We would ask for a reversal on vacation and then directions to the district court to rigorously apply the law and then determine how to go forward. So thank you very much. Thank you both for your argument and the case will be submitted.